The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning. We're ready to hear oral argument in our first case, Reyes v. McCament. Mr. Banais. May it please the Court. My name is Brad Banais and I, along with my co-counsel Andres Lopez, represent the appellant Mariela Hernandez Reyes. I apologize for mispronouncing your name. No need to apologize. In this case, the agency denied Ms. Reyes' application for special immigrant juvenile status because the underlying juvenile court order was insufficiently permanent for the purposes of the agency. This decision is arbitrary and capricious for two primary reasons. First off, this permanency requirement is unmoored from the statute and is an extra statutory, extra regulatory, ultra-virus requirement. And for that reason, the decision is ultra-virus under the APA and arbitrary and capricious. The second reason is because even if permanency is allowed by Congress, this order is permanent for immigration purposes. And ignoring important facts, the agency erred under the deferential standard of the APA and the decision is arbitrary and capricious. I do want to point out one important thing to this court as a threshold issue. We are not challenging a final order of removal here. This is not a typical PFR case that this court sees a lot of. And therefore, the standards of review are not found in 8 U.S.C. 1252 that, as your honors know, are extremely deferential to the agency. Rather, this case arose in a federal district court to challenge a denial of a benefit under the Administrative Procedure Act. And so the entire case below is a question of law that this court reviews de novo and essentially looks at the record and determines whether the agency decision is arbitrary and capricious, much like Chief Judge Whitney below. I would also point out that deference is not an issue in this case. Chevron deference does not apply to the final agency action here. Well, whether it's used Chevron deference or not, there is also an alternative holding, which was that in order for the status to be granted, the agency has to exercise its discretion, which requires a certain factual basis for any underlying state court order. So the agency also determined, affirmed by the district court, that there were insufficient facts produced by the petitioner in order for the agency to exercise its discretion. And that's a holding separate and apart from any issue of permanency. Yes, Your Honor. I would point out that the statutory language that the agency acted is actually consent. And the word discretion is not found in that portion of the statute. I'm sorry, but what is the standard for reviewing? If we agree with you about the permanency requirement and that it is ultra-virus, does that answer our ultimate question? Don't we still have the agency's exercise of determining whether or not to give consent? I do think, Your Honor, that the consent issue is an independent ground for denial. And what is the standard of review of that issue? I think that's the standard arbitrary and capricious review. That is, if we look at the State Farm case, I think that's the most concise description of what's arbitrary and capricious. And I will say this, our response to that is a couple of things, that it is arbitrary and capricious because it violates the agency's own policy guidance on what it needs to look at to exercise consent. And I will say here, it is a legal determination. I do not think it's a discretionary determination here because they said there's not enough facts for us to even exercise consent. And so I do think that's legal determination. So I can't point to anything in the statute that tells you what guides their consent. I can't point you to anything in the regulations to tell you what guides their consent. The only document out there, which would be probably a guidance document in terms of administrative law, would be the policy manual. And that is part of the records at page 206 of the record. And it does not limit the agency, okay, from looking at what the juvenile court looked at. It can consider the entire record comprising the documents that were sent in with the application for special immigrant juvenile status. But the juvenile court order, the first order, clearly said it was a temporary emergency order. There had been no development of the record at that point. There had been no effort to contact the mother. I mean, it was a very incomplete record, wouldn't you agree, at that point? Your Honor, yes, but I think that's the typical record for that type of hearing and that type of order. But that's precisely the point. Because of the timing, that was all that there was an opportunity to develop. So that's all we have. And although it may be an accident of circumstance, it nevertheless is what we're left with, isn't it? That's right, Your Honor. But what was in front of the agency at the time they had the opportunity to exercise consent or not were additional affidavits that filled in the details. And under the policy guidance, there's nothing that prohibits the agency from considering those supplementary affidavits in addition. Those were never considered by the juvenile court, either at the initial entry of an order or at the non-protonc order. And, Your Honor, I think this is where we disagree with the government. I think their policy guidance says that they are allowed to consider other supporting evidence in the record of the SIJ application. But this is the agency, and you're looking for some state court adjudication with respect to all the issues that relate to special juvenile immigrant status. And the facts that the petitioner has put forward are affidavits that were never considered by the state court. That's right, Your Honor. But I don't think the government disagrees that the temporary order from the state juvenile court and the non-protonc order do cover sufficient factual findings to satisfy each of the necessary facts. I have no idea what the basis of that is. I mean, it may be perfectly fine for state court purposes, but that does not translate into meeting the requirements for federal immigration law. And, Your Honor, I don't think the agency is an appellate body that overviews the state juvenile court. And let me just read from their own policy guidance. USCIS relies on the expertise of the juvenile court in making the child welfare decisions and does not reweigh the evidence to determine if the child... Unfortunately, that argues you back around in the circle that the evidence wasn't before the juvenile court. Your Honor, there was sufficient evidence before the juvenile court for Judge Mann to make the findings that she made in her order... On an emergency basis, on a temporary... expressly on a temporary emergency basis. And, Your Honor, again, the state court order says what it says. No one is suggesting that that state court order is invalid for any reason. The question is, what do those findings mean under the immigration law? Correct. But wouldn't you agree that without the nunc protunc order, that first order would be insufficient? That's what saves you, or potentially your arguing saves your situation, because, again, with an emergency order, normally that situation occurs when the child is in actual distress, you know, there's some true emergency. It looks to this judge, anyway, as though the only emergency was the timing. I'm curious. When did the child first go into the actual custody of the father? About a year and a half before the order. They had 18 months. Why didn't they do it sooner? Well, Your Honor... Do you know? Well, I'll tell you this. What I do know is that we were dealing with... Is it on the record? It's not on the record. I can tell you this. It takes about a year to get a permanent custody hearing in North Carolina. But the timing, from what I thought curious, is that another hearing was contemplated and nobody realized she'd be turning 18 in the interim? I guess I disagree with that. The order contains her birthday, and if they schedule a five days, it's literally the day after she turned 18. Nevertheless, it's after she turned 18. Your Honor, the agency only requires findings in an order that are contemplated to last until the child turns 18. And Congress has said, age doesn't matter here. We want to protect these children. We want to do everything we can. We look at 8 U.S.C. 1232 and the significant amendments that were done in 2008 under the Trafficking Protection Victims Act. We see that, unlike most areas of immigration law, they set a timeline for the agency to grant an SIJ application to 180 days. They say institute regulations, notice and comment rulemaking, and policies that take into account the unique aspects of dealing with unaccompanied alien children. And they say you cannot deny because of age. Could I just go back and clarify your response to Judge Brinkema, who asked without, I mean, your salvation here is the non-protonc order. Do you disagree with that? Do you believe that the juvenile court order by itself without the non-protonc would have been enough? I think the non-protonc helps our case significantly. I think that there were sufficient findings in the original order. The agency said go get additional findings. We did. And so whether I would characterize it as our salvation, Judge Duncan, I would say that Judge Brinkema does bring up a very valid point that it does help significantly, which is why we went and acquired it. Then we moved to reopen, and the government moved the ball. They said... Well, no. The juvenile court had lost jurisdiction because she turned 18. That's fair, Your Honor. No, it's accurate. I mean, the theory is it really is an unfortunate timing problem that gave you a temporary order, temporary emergency order, that there wasn't sufficient time to cure. Your Honor, I guess that goes back to what I'd characterize as one of the primary issues here. Setting aside the consent issue, permanency is not required by Congress, by the agency, or by their own policy guidance. And I think if we look at, first off, if we look at this court's precedent from only two years ago to a very similar situation in the O. J. O. V. Lynch case, we look at this term that Congress put out there, here it's placed under the custody of an individual. Now, in O. J. O., the word was adoption. Placed under the custody of an individual in this context clearly cites to state domestic relations law. And if Congress wants to limit that to permanent orders, it has to have unmistakably clear intent. And the government hasn't even argued  And so the unfortunate results of timing, Your Honor, are derivative of the CIS's claim that it has to be permanent. And I just don't think there's anything in the statute that requires permanency. Well, no custody order is truly permanent. They're always subject to some change. I think maybe the better word is adequate. Was this an adequate order indicating the custodial status of the child? And the problem is, given the nature of what temporary emergency, those two words are almost words of art, they do mean they're not meant to be the final word. Because there's an emergency situation that has to be immediately addressed by the court. The court's addressing it now, holding the situation. But it could very easily change with additional information. And I agree with that, Your Honor. But that decision's been made. We're not going back and debating what this means under North Carolina law. We are saying, looking at the face of this order, does it make the necessary findings for S.I.J.? And between the two orders, the nunc pro tonc, and the original order, they do. But you need that second order. Without that second order, you just don't have it. And that comes in after she passes the age of 18. But the court had jurisdiction to do nunc pro tonc relief. And the government doesn't argue that we can't consider the nunc pro tonc order. And I think the motion to reopen considers the nunc pro tonc order and still says, well, we see these additional findings. We still don't think it's sufficient because it's not permanent. That's the basis of the final agency action here, permanency. And if permanency is not allowed by Congress, then this court should remand it all the way back to the agency for a full consideration of the file. Because I do think the permanency requirement does infect their consent analysis. Why? Because they're looking for permanent findings and a record underlying that that would allow her to make the judge, Judge Mann, permanent findings. And these findings are permanent because she aged out. And they cannot be changed anymore because she is 18. Information for a temporary finding isn't going to help you, is it? I'm sorry, Your Honor. Information about a temporary finding isn't going to help you, is it? Well, I do think the information from a temporary finding does help. But I also think that the agency... Your burden was to put on sufficient information in order for the agency to exercise its informed judgment as to whether or not it should grant consent. And the record's pretty sparse on the information that was tendered for that that was actually considered by the state court in making any of its determinations. And I think that last clause, Your Honor, is where I guess we disagree. The agency's own guidance says that it can consider the stuff submitted to the state court judge, but also additional evidence. And we did send in two very lengthy affidavits, which are part of the record for the SIJ application. They weren't presented to the state juvenile court judge for whatever strategic reason, but the agency, under their own guidance, has the ability to look at those to exercise... It wasn't a strategic reason. It was a jurisdictional reason. It couldn't come back before the juvenile court. Well, Your Honor, I guess what I meant by saying strategic reason is perhaps the family court lawyer did not want to put all of this very troubling information that's in these affidavits in front of the public record in state court. Well, that was an unfortunate call. But nevertheless, it was in front of the agency whose decision we're challenging, and they are allowed to consider it under their own policy guidance. Again, I'd point you to 206 in the record where it talks about how the agency will defer to state juvenile court judges, and it doesn't require overly detailed information, and that they can consider, quote, other supporting evidence in the record for SIJ. And for those reasons, we would ask that you reverse the district court. Thank you very much. We have some time reserved for rebuttal. Mr. Ward? Did I get your name correct? You did. Thank you, Your Honor. Good morning. May it please the Court, Brian Ward on behalf of the government. Your Honor, we ask that this court affirm the decision of the district court upholding the agency's finding that Ms. Reyes failed to meet the statutory eligibility requirements for SIJ or special immigrant juvenile classification. Do you think permanency is a statutorily grounded requirement? So the agency didn't require permanence, and so they were explicit in this in the information they provided to Ms. Reyes. So permanence is not a requirement of the statute, but they noted to her that the nature of some of the findings that go into the order should be of a permanent nature. This is a benefit that's intended to give alien children a permanent status in the United States. And there's a number of ways in which a more final, maybe a final is a better word than permanent, determination on these issues that need to be in the state court order. Originally, SIJ classification was intended for aliens who are eligible for long-term foster care. And long-term foster care has a particular meaning under state law. That means it's a final determination that the child is going to remain in foster care until they reach the age of 18. It's a determination that there's no longer any opportunity or going to be any efforts made to reunite the child with their family or find them any sort of other placement. Now, a lot of states have moved away from this as a policy matter. The implication is to try and reunite children with their families. And so in 2008, Congress amended the statute in the Trafficking Victims Protection Act and replaced this requirement of a finding that the child be eligible for long-term foster care with the requirement that the reunification with one or both of the parents be not viable. And so the agency interpreting a statute, it's charged with administrating, reasonably interprets this statutory requirement that reunification be not viable as a requirement that you have something more than an emergency temporary order. So essentially, as we laid out in our brief, North Carolina, like a lot of states, has two jurisdictional provisions. Section 201, which is a jurisdictional provision which allows the state court to take jurisdiction and make an actual custody determination. And it also has a section 204, which allows the court to take custody in an actual emergency. So the court doesn't have to have all the factual findings or factual basis it needs to hold a custody hearing. It doesn't have to provide notice to both parents who would have an interest or whose parents or rights would be affected by a custody determination. It's just a jurisdictional provision that allows the court to essentially place the juvenile in protective custody for a short time until the court can hold an actual custody hearing. And that's exactly what the juvenile family court did here. It cited only temporary emergency jurisdiction. The order explicitly says that it's setting a hearing for five days later, and that's the date when the custody determination will be made. The order says that notice should be given to Ms. Reyes' mother so she would have an opportunity to weigh in or attend at a custody hearing where her parental rights would be affected. The timing struck me as somewhat unrealistic since the mother is where, in Mexico? Or no, El Salvador? What country? I don't know where the mother is. Someplace in Central America. I believe she's not in the United States. Yeah. So to expect that within five days there would be notice to her and an opportunity to come back, the timing struck the court is rather unusual. Yes, Your Honor. And I think this provision under state law is probably more often aimed at situations where both parents are located in the state or in the United States. But, again, this is a situation in which the federal government, the agency, defers to state law determinations. And so North Carolina has made a choice that in order to make an actual custody determination, you need to set the hearing for some time in the future and make an attempt at least to provide notice. And so the agency deferred to this determination. North Carolina has also made the determination, which is set out in the case law we cite in our briefing, that when a juvenile court takes only temporary emergency jurisdiction, they're explicitly limited to only entering these temporary emergency custody orders, these temporary protective orders. And they can't actually make a custody determination without at least attempting notice because that would affect the due process rights of the other parent. So the permanency, there isn't a permanency requirement. The agency has reasonably interpreted this requirement that reunification is not viable with one of the parents on the basis of abuse, neglect, or abandonment to require something more than just a protective order that says we don't need a factual basis. Someone's brought a child into the court and says there's an emergency. We'll place the child in the temporary custody of her father until we can figure this out, provide notice. Your opposing counsel has argued that after this happened, after the temporary order was obtained, there were these two affidavits, one from the child, one from the father, submitted to your agency. Why would that not be sufficient information? Yes, Your Honor. So, again, this goes to the consent requirement under the statute, which the agency reasonably interprets to require that there was some reasonable factual basis for the state court to make these findings. They won't accept a state court order that appears not genuinely aimed at trying to help a juvenile avoid. Isn't that one of the issues here? The timing was so close to the 18th birthday, a concern that the real effort to get custody established was to get the immigration status. Yes, Your Honor. But the agency is very willing to look at evidence beyond what's in the court's order, the juvenile court's order. They ask only that there's some reasonable factual basis for the court's findings. And as opposing counsel raised, the agency is willing to look beyond what's specifically in the juvenile court order. What about the affidavits were insufficient? So what they're looking for is that the juvenile court, the juvenile court judge had a reasonable factual basis for making those findings. So the affidavits are dated after the juvenile court hearings. So it's clear that these were not affidavits that were presented to the court. Were they after the NUNC Pro Tunk order? I'm not sure of the answer to that, Your Honor. But again, there's no evidence that these affidavits were ever presented to the juvenile court at any time. The affidavits don't set out that there was testimony or certain evidence before the court. And in USCIS in the initial decision, before they issued an initial decision, they gave notice to Ms. Reyes by issuing what's called a notice of intent to deny. And they asked, they notified Ms. Reyes that there were several problems with the court order that had been issued. And so gave her an opportunity to present before the agency even made a decision, any additional evidence that she might have to support the order to show that the order had a reasonable factual basis. And rather than providing additional evidence showing what was before the juvenile court, she said instead that to the extent required findings were missing from that Now the agency, again, is going to defer to the state court order. The agency can't read in factual findings to the juvenile court's order that the juvenile court didn't make. These two affidavits had been submitted to the agency. In response to that, she submitted the affidavits, but they were dated after the family court proceedings. So your basis for saying there was a non-arbitrary, non-capricious basis upon which the agency exercised its decision not to consent to the status was that there was no proof in the record that these affidavits or any other evidence was before the juvenile court at any time? That's correct, Your Honor. At no point, despite multiple opportunities to respond to the agency's request and on evidence showing what was actually before the juvenile court. So I think there's really three statutory requirements that Ms. Reyes fails to meet. The first is the requirement under the statute that you have a valid custody order from a state court that has jurisdiction to make a custody determination. She doesn't have that. What she has is a temporary protection. The second one is the requirement that the state court specifically make a custody determination of a juvenile due to abuse, neglect or abandonment. The initial order that she submitted, the emergency ex parte order made no mention of reunification. It made no finding related to reunification whatsoever. And so without a finding that reunification is not viable on these specific bases, the court, the agency couldn't grant special immigrant juvenile classification. And then the third is the statutory requirement of consent, which again, despite multiple opportunities, Ms. Reyes hasn't shown that there was a factual basis for the juvenile court to make findings related to reunification, to actually issue custody. Even in the non-croton order at that time, she had aged out of the juvenile court's jurisdiction. The juvenile court didn't award custody at that time, didn't cite any basis to retain jurisdiction or take jurisdiction to issue an actual custody order. It just may put additional statements into the earlier order, but essentially it's still just amending what was only an ex parte, temporary five-day order. Could the juvenile court have amended its order after the date of her birthday? So the juvenile court could amend its order, but it would be limited to the factual findings and to the jurisdiction that was available to the court at the earlier time. That's what a non-croton order does. It just replaces the prior order as if it were issued at that time, but is limited to whatever was before the state court at the time it made its initial decision. Yes, Your Honor. I think one overarching point here is just the congressional intent in enacting the SIJ provision. Congress's point in enacting the SIJ provision was to provide an avenue for permanent status for a particular group of aliens. And the way Congress envisioned it working is that if a child had a valid custody order from a juvenile court with jurisdiction to issue it that was placing them in custody to help them avoid abuse, abandonment, or neglect, they could file with the agency what's called an SIJ petition. And if they met the statutory requirements under the SIJ statute, and that was their granted SIJ classification, they could use that SIJ classification to apply for legal permanent residence in the United States, become an LPR, and get a green card. So it's a serious and permanent benefit that Congress has provided, but it's not an unlimited one. So there are annual statutory caps on the number of individuals with SIJ classification that can become legal permanent residents. So the agency reasonably wants to ensure that SIJ classification is going to individuals that meet the purpose of the statute. So what the agency is just trying to do is making sure that when someone files an SIJ petition they genuinely meet the statutory eligibility requirements Congress set out for that someone has to meet before it can be approved so that this classification and the resulting path to permanent residence in the United States are going to the individuals Congress was really seeking to protect, again, those who are seeking to escape abuse, neglect, or abandonment. Thank you very much. Thank you, Your Honors. Do you have some time for rebuttal? Just a couple of points. One, I'll just point out when you asked about the government about whether the permanency requirement is valid, there was no reference to a statute, no reference to a regulation. Instead, it was straight to statutory history. That's not how this court looks for congressional intent. We start with text, structure, and then if we have to, we get to history. And so I would argue that the answer to that question was no, there's no statutory requirement for permanency. Second, the government followed that up by saying, well, we reasonably interpret it here for the findings. We don't require a permanent order, we require permanent findings. And I just want to read to you what the government's only interpretation of how final the permanency or how final those findings have to be. USCIS generally requires that a court order be valid at the time of filing and must determine that the court intends that a child will not reunify with at least one parent until the child reaches the age of majority. That's the level of permanency or finality of the findings. Those findings have to be in place until the child reaches the age of majority. The same thing with lack of reunification. Again, I'll point you to page 203 of the record that contains the agency's only interpretation of these requirements, which is in its policy guidance. And it said, the same thing with lack of viable reunification, generally means that a court intends its finding that the child cannot reunify with a parent, sorry, reunify with his or her parent or parents, remains in effect until the child ages out of the juvenile court's jurisdiction. Those findings do not have to mean that at age 25, you know, the child won't reunify with the parent or have some sort of reckoning, right? They only have to be until the child turns 18. Here, four days, four days. There was no, as Judge Rinkum had brought up, there's no reasonable belief that they were going to reunify in four days. And so even under the government's policy guidance, I would say that we met sufficient permanency if that's a requirement for SIJ status. The district court brought up notice to the parent. I do want to point out that 8 U.S.C. 1357H provides significant protections to SIJ applicants and says that no immigration officer can compel her to communicate with an abandoning or abusive parent. So there is a limit on notification in these cases. The agency cannot do indirectly what it cannot do directly. And trying to require my client to notice something to her abandoning and abusive mother through requiring that from a state court order? I think that's a bit of an overstatement that the mother, the point is that the mother has some due process rights in the proceeding and should be aware that they are going on. And I understand that. And that deeply troubled the district court. And I would just say that it's established law that a foreign national abroad's due process rights are what Congress says they are. They do not derive from the Constitution. And here Congress has said a abusive parent or an abandoning parent does not have a due process right to communicate with their child. The agency cannot compel that child to communicate with them. I just point you to that statute. Again, it goes with the overall intent to expand protections for this very vulnerable population. Finally, I would just say with the consent, I do want to clear something up for you, Judge Agee. The temporary order came out. They issued the notice of intent to deny. The affidavits were submitted. It was denied. And then the non-proton order came after that. And what I heard the government say was that they're willing to go beyond what was in front of the juvenile court to consider and to exercise their consent function. Yet they refuse to consider these affidavits. The affidavits are detailed. They provide the factual basis. When the NOID was issued, Ms. Reyes, as immigration attorney, drafted the affidavits to explain and further tell them what the factual basis for the claim was. The final agency action here just refuses arbitrarily to consider that. And under State Farm, if you don't review an important fact or factor, that's an arbitrary and capricious decision. And for that reason, we would argue that the permanency requirement is ultra-virus and that the decision to not exercise consent is arbitrary and capricious. And we'd ask you to reverse this case or reverse the district court. Thank you, Honors. Thank you. We will come down and greet counsel and go directly to the next case.
judges: Allyson K. Duncan, G. Steven Agee, Leonie M. Brinkema